UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>    Plaintiffs,<br>    v.<br>KAISER FOUNDATION HEALTH PLAN, INC.,<br>    Defendant. | Case No. 12-cv-03896-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND STRIKE**<br><br>Re: Dkt. Nos. 18, 19 |

On August 21, 2013, the Court heard argument on defendant's Motion to Dismiss and Motion to Strike. For the foregoing reasons, the Court GRANTS in part and DENIES in part both the Motion to Dismiss and the Motion to Strike.

**BACKGROUND**

Plaintiff ProTransport-1, LLC filed this complaint on behalf of itself, the United States, and the State of California against Kaiser Foundation Health Plan, Inc. Plaintiff asserts causes of action for violations of the False Claims Act ("FCA," 31 U.S.C. § 3729(a)(1)), violations of the California False Claims Act (Cal. Govt. Code § 12651(a)), violation of California Health and Safety Code § 1278.5, violations of California's Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200), breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment/restitution. Docket No. 1. All of the claims stem from ProTransport's allegations that Kaiser refused to pay ProTransport for its services transporting Kaiser patients with End Stage Renal Disease (ESRD) to and from dialysis treatments and instead required ProTransport to seek reimbursement for its services from Medi-Cal. Complaint ¶¶ 34-39. ProTransport alleges that under the Medicare Act and its implementing regulations, Kaiser was required to pay ProTransport in the first instance, and that requiring plaintiff to seek

reimbursement from Medi-Cal was improper and a fraud. *Id*. ProTransport also alleges that after its representatives complained to Kaiser about its practice, Kaiser retaliated against ProTransport by refusing to pay for any transports made by ProTransport and excluding ProTransport from bidding to provide future services to Kaiser. *Id*., ¶¶ 42-43, 46, 50-51. In March 2013, the United States and California declined to intervene in the action, and the Court on April 2, 2013 ordered the Complaint served on Kaiser. Docket No. 23.

Kaiser now moves to dismiss the Complaint and strike allegedly immaterial and improper references from the same. In response to the motion to dismiss, plaintiff agreed to dismiss seven out of the ten claims, and opposes dismissal of only the claim under the federal False Claims Act (31 U.S.C. § 3729(a)(1)(D)), violation of the anti-retaliation provision of California Government Code section 1278.5, and violation of the UCL. *See* Docket No.29 (Notice of Voluntary Dismissal of Claims); Plaintiff's Opposition at 1, 7.[1]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*,

---

[1] Plaintiff's Notice of Voluntary Dismissal indicates that it dismisses Claims 2-5 (the federal False Claim Act claim under 31 U.S.C. § 3729(a)(1)(A) and the California False Claim Act claims) without prejudice subject to the consent of the Attorney General. Docket No. 29. The Attorney General consented to the dismissal without prejudice on August 1, 2013. Docket No. 31. In its Opposition, plaintiff also agrees to dismiss without prejudice of its breach of the implied covenant, quantum meruit, and unjust enrichment claims in order to exhaust Medicare's administrative requirements. Oppo. at 7. Defendants do not object. The Court, therefore, DISMISSES WITHOUT PREJUDICE Claims 2-5 and 8-10 of the Complaint.

550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. MOTION TO DISMISS

#### A. False Claims Act

Plaintiff's FCA claim is brought under 31 U.S.C. section 3729(a)(1)(D) which provides for FCA liability when an entity or person "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property." In the Complaint, plaintiff alleges that Kaiser violated this section of the FCA ("Reverse False Claims," Complaint at 14) by receiving and controlling money of the federal government and knowingly failing to deliver less than the full sum of that money "for the benefit of its patients," when it required ProTransport to seek payment from Medi-Cal. Complaint, ¶ 54. That conduct, ProTransport alleges, amounted to false or fraudulent claims incurred by the United States. *Id*. ¶ 55. In its Opposition, plaintiff argues that its FCA claim is a "implied false certification" claim, which arises when an entity has "obligated itself to complying with a law, rule or regulation" and that obligation is implicated by submitting a claim for payment. Oppo. Br. at 11 (quoting *Ebeid v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010)).

#### 1. Subject Matter Jurisdiction and Administrative Exhaustion

As an initial matter, Kaiser argues that plaintiff's FCA claim is simply a disguised attempt to secure payment for its services, and as such, the case "arises under" the Medicare Act and must

be dismissed for failure to exhaust Medicare's administrative procedures.[2] *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th Cir. 2010). ProTransport responds that this claim is not one for reimbursement, but one to secure a recovery for the United States as a result of Kaiser's false claims. ProTransport argues that FCA claims are not subject to the administrative exhaustion.

As the Ninth Circuit has noted: "the Supreme Court has identified two circumstances in which a claim 'arises under' the Medicare Act: (1) where the 'standing and the substantive basis for the presentation of the claims' is the Medicare Act . . . and (2) where the claims are 'inextricably intertwined' with a claim for Medicare benefits." *Uhm*, 620 F.3d at 1141 (quoting *Heckler*, 466 U.S. at 614-15). The Ninth Circuit has also found another category of cases that "arise under" the Act, "those cases that are "'[c]leverly concealed claims for benefits.'"" *Id*. (quoting *Kaiser v. Blue Cross*, 347 F.3d 1107, 1112 (9th Cir. 2003)).

In support of its argument that its FCA claim does not "arise under" the Medicare Act, plaintiff relies primarily on *United States v. Blue Cross & Blue Shield* (*In re ex rel Body*), 156 F.3d 1098 (11th Cir. 1998) and *United States v. Tenet Healthcare Corp.*, 343 F. Supp. 2d 922, 928 (C.D. Cal. 2004). In *Body*, a former employee of the defendant brought a FCA action, asserting that defendant had fraudulently submitted inflated claims for reimbursement under Medicare. The Court noted that section 405(h) was intended to allow "the administrative process the first opportunity to resolve disputes over eligibility or the amount of benefits awarded under the Act" and prevent "beneficiaries and potential beneficiaries from evading administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statutes and regulations." *Id*. at 1103-04. The Court distinguished the FCA claim at issue there because actions "which do not seek payment from the government and could not be

---

[2] Kaiser contends, and ProTransport does not dispute, that under 42 U. S. C. § 405(h) as made applicable to the Medicare Act, claims for Medicare benefits or coverage for services must be pursued through all available administrative procedures before judicial review is available. *See e.g., Heckler v. Ringer*, 466 U.S. 602, 615 (1984); 42 U.S.C. § 405(g). As applicable to Medical Advantage Plans – the types of plans at issue in this case – disputes over coverage or for reimbursement of services must be submitted through the administrative dispute resolution process. *See e.g.*, 42 CFR § 422.560 (requiring MA organizations to institute grievance and appeal procedures).

brought under section 405, are therefore not barred by subsection 405(h)." *Id*. at 1104. The Court concluded that because the standing and basis of the claim alleged was the FCA and not the Medicare Act – although the defendant's application of Medicare rules and regulations "clearly would be determinative of whether false claims were, in fact, submitted" – and because the plaintiff's suit could not go forward under the administrative review process, the action was not barred by section 405(h). *Id*. at 1105-06.

In *Tenent*, the United States sued healthcare providers seeking reimbursement of monies the government paid to the providers for Medicare services that were billed at higher-rates than appropriate. The Court found that the government's standing was rooted in the "False Claims Act and similar common law doctrine, which also provide the substantive basis for relief." *Id*. at 927. The Court concluded that:

> [s]ince the Court is not faced with a claim for reimbursement from a dissatisfied provider that should be channeled through the administrative process, this case does not 'arise under' the Medicare Act. [] Rather, because the government's action is predicated on the submission of inaccurate and misleading claims, the common law, not the Medicare Act, provides both standing and the substantive basis for the claim."

*Id*. at 928.

As in *Body* and *Tenent*, here the FCA and not the Medicare Act provide both standing and the substantive basis for ProTransport's claim. While Kaiser argues that ProTransport could seek a determination of whether the transports at issue were covered by Medicare (and should have been paid for by Kaiser in the first instance) through the administrative claims resolution procedures,[3] Kaiser does *not* argue or explain how the FCA claim asserted on behalf of the United

---

[3] Kaiser asks the Court to take judicial notice of an Office of Medicare Hearings and Appeals Notice of Decision: Lexxiom Medical Services, ALJ No. 1-1341807952. Request for Judicial Notice [Docket No. 18], Attachment 3. In that decision, an ALJ denied a request for Medicare Part B coverage for ambulance transportation services that were provided without a written order from the beneficiary's attending physician and without preapproval from the Plan. Plaintiff does not oppose the Request for Judicial Notice. Pursuant to Rule 201, courts may only take judicial notice of "adjudicative facts" that are "not subject to reasonable dispute." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may also take judicial notice of some public records, including records and reports of administrative bodies. *Id*. at 909. The Court, therefore, grants the request to take judicial notice of the Notice of Decision, but not the conclusions of fact reached in that decision. *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (courts can take

1  States could be pursued through the administrative procedures.

2  Kaiser relies on *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010). In that
case the Ninth Circuit determined that breach of contract and unjust enrichment claims based on a plan's failure to provide prescription drug coverage despite plaintiffs' payment of premiums "arose under" the Medicare Act and were subject to administrative exhaustion. The fact that plaintiffs were not seeking coverage under the plan or reimbursement of lost benefits, but instead seeking breach of contract and unjust enrichment damages, did not alter the Court's conclusion because "at bottom" the plaintiffs were complaining about the denial of a benefit despite their payment of premiums. *Id.* at 1142-43. The Court found that the breach of contract claim was simply, "a backdoor attempt to enforce the Act's requirements and to secure a remedy for Humana's alleged failure to provide benefits." *Id*. at 1143. Finally, the Court noted that plaintiffs failed to allege any injury "that could not be remedied through the retroactive payment of Medicare drug benefits" and concluded that plaintiffs' "claim for benefits could have been remedied through the Act's administrative review process." *Id*. at 1144.

Here, as noted above, ProTransport was actually paid for the services it contends were covered by Medicare, albeit by Medi-Cal. Therefore, payments to ProTransport for services provided in the past are not at issue. Nor are payments that might be made in the future, as ProTransport was allegedly barred by Kaiser from bidding to provide future services. Complaint, ¶¶ 50-51. Moreover, the nature of the claim at issue – False Claims Act – is fundamentally different than the breach of contract and unjust enrichment claims at issue in *Uhm*. Here, there is no indication that the claims asserted on behalf of the United States – return of monies paid as premiums to Kaiser – could be addressed in the administrative process.

Defendant also relies on *Kaiser v. Blue Cross*, 347 F.3d 1107 (9th Cir. 2003). There, plaintiffs brought claims alleging violations of various Medicare regulations, the Administrative Procedure Act and the Fifth Amendment based on the Health Care Financing Agency's (now known as Centers for Medicare and Medicaid Services, CMS) issuance of various regulations and

---

judicial notice of other courts' decisions, but only for existence of the opinion and not for truth of the facts asserted in the opinion).

their cessation of payments to plaintiffs' business.  The Court found that these claims "arose under" the Medicare Act, despite the fact that plaintiff's sought damages beyond the reimbursement of payments available under Medicare because plaintiffs' claims were "inextricably intertwined" with the reimbursement claims of their former business.  The FAC claim asserted here stands on different footing because it does not seek recovery for ProTransport's damages.[4]

Kaiser also points out that unlike *Tenet*, here plaintiff is clearly a "dissatisfied" provider, and that the Court in *Body* distinguished the FCA claims at issue there from "veiled claims for benefits by a disgruntled beneficiary that could have, and should have, been pursued administratively in the first instance."  156 F.3d at 1109.  There is no dispute in this case that ProTransport was a "provider" and is "disgruntled" by Kaiser's conduct.  However, under the three claims left in the case, ProTransport is *not* seeking payment for its Medicare-related transportation services.  Indeed, in its Complaint, ProTransport alleges that it *was reimbursed* for its transports by Medi-Cal (reimbursement it sought only under Kaiser's direction).  *See* Complaint ¶¶ 6, 39 (noting "Medi-Cal approved for payment" ProTransport's claims for transportation).  Similarly, ProTransport is not arguing that Kaiser's direction to seek payment from Medi-Cal resulted in lower payments to ProTransport – a claim which would need to be pursued through the administrative claims process. Instead, ProTransport is asserting a claim on behalf of the United States claiming Kaiser's conduct defrauded the government.

Similarly, the fact that the Medicare statute and regulations will need to be interpreted to determine whether Kaiser's conduct violated the FCA does not make this case "inextricable intertwined" with a claim for reimbursement or for benefits.  *But see Kaiser v. Blue Cross*, 347 F.3d at 1114.  Indeed, as the Eleventh Circuit noted in *Body*, 156 F.3d at 1109, "subsection 405(h), viewed within the context in which it was drafted and made applicable to Medicare, simply seeks

---

[4] In its breach of the implied covenant and quantum meruit claims – which are dismissed to allow exhaustion of the claims in the administrative process – ProTransport claims that Kaiser has refused to pay ProTransport "for the reasonable value of its services for these medical transports" and ProTransport has "incurred loss of revenue and the costs expended in transporting Kaiser's patients" at the request of Kaiser.  Complaint ¶¶ 102, 108, 109.

7

to preserve the integrity of the administrative process Congress designed to deal with challenges to amounts determinations by dissatisfied beneficiaries, not to serve as a complete preclusion of all claims related to benefits determinations in general."

Kaiser asserted during oral argument that if this Court allows ProTransport's FCA claim to continue, it will open the "floodgates" for dissatisfied service providers to bring claims in court and avoid administrative exhaustion. However, FCA claims can only be alleged based on a particularized allegation of fraud to the United States and can only seek recovery on behalf of the United States; only that narrow class of plaintiffs will be able to proceed directly in federal court. Those who assert disguised claims for benefits or services – like ProTransport's breach of implied covenant and quantum meruit claims – will have to exhaust those claims in the first instance.

In conclusion, the Court finds that plaintiff's FCA cause of action is not a "disguised" claim for benefits nor it is "inextricably intertwined" with a claim for benefits and, therefore, does not "arise under" the Medicare Act.

### 2. Failure to Satisfy Rule 9(b)

Kaiser also argues that plaintiff's FCA claim must be dismissed because the Complaint fails to plead the FCA claim with particularity under Federal Rule of Civil Procedure 9(b). In Opposition, plaintiff clarifies that its theory of FCA liability under section 3729(a)(1)(D) is based on an "implied false certification." Opposition Br. at 11. In the Ninth Circuit, the four elements of a false certification claim are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). A theory of implied false certification is "'based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment.'" *Ebeid v. Lungwitz*, 616 F.3d 993, 996 (9th Cir. 2010) (quoting *U.S. ex rel. Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001)). As the Ninth Circuit explained in *Ebeid*:

> Express certification simply means that the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted. Implied false certification occurs when an entity has previously undertaken

> to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim. Under both theories, "[i]t is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit."

*Id*. at 998 (quoting *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)).

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). As applied here, "[t]o survive a Rule 9(b) motion to dismiss, a complaint alleging implied false certification must plead with particularity allegations that provide a reasonable basis to infer that (1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation." *Ebeid*, 616 F.3d at 998.

The Court has reviewed the Complaint in detail and agrees with Kaiser that it fails to adequately plead the remaining FCA claim. While the Complaint cites to various statutes and regulations to argue that Kaiser's Medical Advantage plan is required to provide the same level of coverage required under Medicare and that medically necessary transports are covered by Medicare, *see e.g*., Complaint ¶¶24-25, 27-29, the Complaint does not identify which law, rule or regulation Kaiser undertook to comply with that "is implicated in submitting a claim for payment."[5] Moreover, the Complaint does not identify what "claims" Kaiser submitted that were "impliedly" false. Plaintiff attempts to rely on six representative examples of patients suffering

---

[5] For example, in *U.S. ex. rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001), the Court held that an implied false certification claim under the Medicare Act could be based on 42 U.S.C. section 1395y(a)(1)(A), which prohibited payments for medical procedures not "reasonably necessary," but not on 42 U.S.C. section 1320c-5(a), which mandated a qualitative standard of care. As the Second Circuit explained, because section 1320c-5(a) established "conditions of participation, rather than prerequisites to receiving reimbursement" under the Medicare Act, it could not be a basis for an implied false certification claim. *Id*. at 701-02. However, a claim could be based on section 1395y(a)(1)(A) which contained "an express condition of payment – that is, 'no payment may be made' – it explicitly links each Medicare payment to the requirement that the particular item or service be 'reasonable and necessary.'" *Id*. at 700*; see also Ebeid*, 616 F.3d at 1000-10001 (discussing the difference between statutes and regulations which contain a "condition of payment" as opposed to a "conditions of participation").

with ESRD who were transported by plaintiff but whose claims for transportation were not paid by Kaiser. Opp. Br. at 13. But these "claims" were submitted by ProTransport to Kaiser, not claims for payment submitted *by Kaiser*. Finally, it is unclear how this "implied false certification" allegation fits within section 3729(a)(1)(D), which prohibits a person or entity having custody of the government's money or property from delivering "less than all of that money or property."[6]

Simply put, ProTransport's Complaint does not sufficiently allege the "who, what, when, where, and how" of the asserted implied false certification claim to allow Kaiser to defend. Therefore, Kaiser's Motion to Dismiss is GRANTED with respect to ProTransport's FCA claim. However, as it is not clear that ProTransport would not be able to adequately allege a FCA claim, the dismissal is WITH LEAVE TO AMEND. If ProTransport wishes to amend, it must file an amended complaint within twenty (20) days of the date of this Order.

### B. California Health & Safety Code § 1278.5

Kaiser also moves to dismiss ProTransport's claim under California Health and Safety Code section 1278.5, arguing that as a non-contracted transportation service provider ProTransport is not within the scope of the statute's protection. Section 1278.5(b)(1) provides that "[n]o health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person has" presented a grievance or complaint to the facility, an agency or any other governmental entity. ProTransport asserts that it is covered by the statute as "any other health care worker" of Kaiser, and that as a "remedial statute" section 1278.5 should be broadly interpreted to include entities like ProTransport. Opp. Br. at 14-15. There are two problems with ProTransport's position.

---

[6] In case plaintiff attempts to revert to its "reverse false claims" allegation raised in the Complaint, as the Ninth Circuit explained in *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047 (9th Cir. 2011), allegations of "reverse false claims" require identification of a "false claim" or "statement" made to avoid paying a debt or returning property to the United States. *Id*. at 1056. No such allegations have been made here. *Cf*., *Cafasso* at 1056 (dismissing FCA claim because "it does not allege that GDC4S falsely asserted an entitlement to obtain or retain government money or property. It does not allege that GDC4S made a demand for payment, fraudulently used a receipt, participated in an unauthorized purchase of government property, or used a false record or statement.").

10

1          First, ProTransport is not "any other health care worker" but an entity.  There is no
2   evidence in either the statute itself or in its legislative history that the California Legislature
3   intended to cover entities.  All of the categories covered by the statute "patient, employee, member
4   of the medical staff, or any other health care worker" are individuals, not entities.   ProTransport
5   argues that where the legislature wanted to limit whistleblower protection to specific individuals
6   or classes of individuals it did so.  Opp. at 15 (citing Cal. Bus. & Prof. Code 2056 (providing
7   "protection against retaliation *for physicians* who advocate for medically appropriate health care")
8   (emphasis added); Cal. Bus. & Prof. Code § 510 (providing "protection against retaliation for
9   *health care practitioners* who advocate for appropriate health care for their patients") (emphasis
10  added)).  But simply because the Legislature provided for whistleblower protection for specific
11  categories of professionals within the Business and Professions Code does not mean "entities" are
12  included in the list of persons expressly protected from retaliation by health facilities in section
13  1278.5.[7]

14          Moreover, as Kaiser points out, the original statute covered only patients and employees.
15  In 2007, the Legislature – recognizing a gap in coverage for physicians and surgeons who are not
16  typically employees of a health care facility – amended the statute to "[a]dd[] physicians and
17  surgeons to employees of health facilities . . . that have 'whistleblower protection. . . ." Assemb.
18  Comm. on Appropriations, Report re A.B. 632, 2007-08 Reg. Session, at 1 (Apr. 24, 2007).  The
19  Senate Report noted that – according to the legislation's sponsor – "any other health care worker
20  of the health facility" "could be interpreted to include persons such as blood, organ, and tissue
21  transporters, emergency medical technicians or paramedics, and physical therapists.  By adding
22  the phrase 'other health care workers' in the protected class, therefore, these persons would enjoy
23  the whistleblower protections now enjoyed only by patients and employees of the health facility."
24  S. Judiciary Comm., Report on A.B. 632, 2007-08 Reg. Sess.. at 6 (July 12, 2007).  The legislative
25  history repeatedly refers to individuals – "people" and "these persons" – and there is no indication

---

[7]  Relatedly, Kaiser argues that because in other code sections the Legislature explicitly defined "health care worker" to encompass only individuals, section 1278.5 should likewise be limited, even absent an express definition.  *See* Brief at 20 (citing Cal. Labor Code § 6332(a)(1) and § 6403.5(e)).  The Court does not find this argument persuasive or necessary to its conclusion.

that the Legislature intended entities to be covered.

Second, ProTransport ignores that only a "health care worker *of the health facility*" is covered. ProTransport does not work in or for Kaiser's various health care facilities. Instead, it is a non-contracted transportation service, transporting patients of various medical plans to various medical facilities. There is no indication in the statute itself or its legislative history that the California Legislature intended to cover non-contracted entities such as ProTransport under section 1278.5.[8]

ProTransport argues that if the Court finds that entities are not protected by section 1278.5, it will amend to add ProTransport's Chief Executive Officer, Mike Sechrist, as a party. Opp. Br. at n. 4. The Court finds that amendment would be futile because there no argument or evidence presented that ProTransport's CEO is a "health care worker." Moreover, as with ProTransport itself, there is no evidence that ProTransport's CEO is a health care worker "*of*" a Kaiser facility.

For the foregoing reasons, the California Health and Safety Code section 1278.5 claim is DISMISSED WITH PREDJUDICE.

### C. Unfair Competition Law

Kaiser moves to dismiss ProTransport's Unfair Competition Law Claims ("UCL," Cal. Bus. & Prof. Code § 17200 *et seq*.).[9] In the Complaint, ProTransport alleges that Kaiser's conduct violated the "illegal prong" of the UCL based on ProTransport's allegations that Kaiser violated the FCA and California Health and Safety Code section 1278.5. Complaint, ¶ 91. However, as those allegations have been dismissed, so must plaintiff's "illegal" UCL allegations.

ProTransport also alleges that Kaiser's conduct is "unfair" under the UCL because it refused to pay for medically necessary transports. ProTransport contends that its unfairness

---

[8] ProTransport also relies on a case where the Ninth Circuit held that a corporation's experience of discrimination brought that corporation within the "prudential zone of interest protected under [42 U.S.C.] § 1981." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004). That case, however, bears no relevance to determining the scope of section 1278.5 in light of *this* statute's words and legislative history.
[9] The UCL "is written in the disjunctive, it establishes three varieties of unfair competition - acts or practices that are unlawful, or unfair, or fraudulent." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone C*o., 20 Cal. 4th 163, 180 (1999).

1 allegation is "tethered" to legislative policies against defrauding the government, protecting
2 patients, protecting patients' advocates, and encouraging competitive bidding. Complaint, ¶ 92.
3 In its opposition, ProTransport explains that its "unfairness" claim is based on its allegations that
4 Kaiser retaliated against ProTransport – after ProTransport complained of inadequate patient care
5 and fraud – in that Kaiser refused to pay for any of plaintiff's transports (not just Medicare
6 transports) and Kaiser refused to allow ProTransport to participate in its competitive bidding
7 process. Opp. Br. at 16.
8       Kaiser argues the "unfairness" allegations are barred for two reasons. First, Kaiser argues
9 ProTransport's consumer protection claims are preempted under the Medicare Statute. Br. at 21-
10 22; Reply Br. at 13-14; *see also* 42 U.S.C. § 1395w-26 ("The standards established under this part
11 [42 USCS §§ 1395w-21 et seq.] shall supersede any State law or regulation (other than State
12 licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered
13 by MA organizations under this part."); 42 C.F.R. § 422.402(a) ("The standards established under
14 this part supersede any State law or regulation (other than State licensing laws or State laws
15 relating to plan solvency) with respect to the MA plans that are offered by MA organizations").
16 However, the two cases Kaiser relies on *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 and
17 *Phillips v. Kaiser Found. Health Plan, Inc.*, 2011 U.S. Dist. LEXIS 80456 (N.D. Cal. July 25,
18 2011), do not support its argument here.
19       In *Do Sung Uhm v. Humana, Inc.*, the Ninth Circuit held that plaintiffs' fraud and
20 consumer protection act claims – based on misrepresentations made by the defendant in marketing
21 its plan – were preempted under the Medicare Act's explicit preemption provision. The Court
22 reached that conclusion because determining whether the marketing at issue was fraudulent and
23 misleading would conflict with a specific "standard" requiring CMS to approve plan marketing
24 materials and determine whether or not they were misleading. *Id.*, 620 F.3d at 1150-53. Here,
25 however, defendant has not identified any particular portion of the Medicare Act or a standard
26 promulgated by CMS that would conflict with ProTransport's claim that Kaiser retaliated against
27 it by refusing to pay for non-Medicare transports and by excluding it from bidding to provide
28

13

services to Kaiser.[10]

Similarly in *Phillips v. Kaiser Found. Health Plan, Inc.*, the Court determined that that plaintiff's claims were either (a) a disguised attempt to seek benefits, which were subject to exhaustion; or (2) a challenge to the defendant's marketing materials, which was preempted under the same specific standard identified in *Uhm*. 2011 U.S. Dist. LEXIS 80456 at *28-29. As noted above Kaiser fails to identify any standard that could be implicated by determining whether it was unfair of Kaiser to retaliate against ProTransport by failing to pay ProTransport for non-Medicare transports and excluding ProTransport from its bidding process.

Second, Kaiser argues that ProTransport fails to adequately allege its UCL unfairness claim under Rules 9(b) and 12(b)(6). Reply Br. at 14-15. However, "fraud" is not an element of the *remaining* "retaliation" unfairness UCL claims, therefore, Rule 9(b) does not apply. As to Rule 12(b)(6), the Court finds that Kaiser has adequately alleged the basis for its assertion that Kaiser unfairly retaliated against it as a result of ProTransport's complaints about billing and patient care.

As such, Kaiser's Motion to Dismiss the UCL claim is GRANTED in part and DENIED in part. ProTransport's "illegal" prong UCL claims are DISMISSED, however, with leave to amend if ProTransport amends its FCA claim.

## II. MOTION TO STRIKE

Kaiser moves to strike various portions of the Complaint which, it contends, contain immaterial and scandalous allegations which will serve only to distract and waste resources. Kaiser also moves to strike portions of ProTransport's requests for relief under its UCL claims, as the requests cover damages and other monies that are not available as restitution under the UCL.

### A. Immaterial and Scandalous Material

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an

---

[10] The Court agrees with Kaiser, however, that to the extent ProTransport is complaining about Kaiser's failure to pay for *Medicare* transports, those claims are subject to exhaustion and cannot form the basis of the UCL unfairness claim.

14

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (citation omitted).   Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice."  *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp. 2d 1048, 1057 (N.D. Cal. 2004).

The Court will address each portion of the Complaint Kaiser moves to strike in turn.

> <u>Paragraph 4, Page 2, Lines 22-23</u>: "If they do not receive this treatment, they die within weeks."

The Court DENIES the Motion to Strike.  This allegation is not immaterial or scandalous.

> <u>Paragraph 7, Page 3, Lines 13-17</u>: "What about the patients? These patients, who could live for years with dialysis, die within weeks without these transports. Of course, Kaiser welcomes these deaths because these are the 'expensive patients' who actually require care and cost Kaiser money. When these patients die, Kaiser is left with a 'cheaper' patient population that costs Kaiser much less money. With practices like these, it's no wonder how Kaiser is making billions in profits year-after-year."

The Court GRANTS the Motion to Strike in part.  References to Kaiser welcoming deaths, causing deaths or profiting from deaths – unsubstantiated by factual allegations – are immaterial and scandalous and should be stricken.

> <u>Paragraph 8, Page 3, Lines 18-25</u>: "Unfortunately, this is not the first (or even the third) time Kaiser has been caught defrauding the government. Indeed, in 2009, Kaiser was forced to settle two separate False Claims matters resulting from its Medicare and Medicaid fraud for $5,580,000. Prior to those settlements, Kaiser was forced to settle another False Claims action, in 2005, for $1,900,000 due to its Medicare and Medicaid fraud. (Attached hereto as Exhibit A are press releases regarding these settlements.) However, in this case, the unlawful practices opposed by ProTransport are far more egregious than those at issue in the prior actions, and involve tens of millions of dollars if not substantially more."

15

1   The Court DENIES the motion to strike. While of questionable relevance, the allegations

2   are not immaterial or impertinent.

>   <u>Paragraph 41, Page 12, lines 16-19</u>: "Of course, Kaiser knows very well that without dialysis these patients will die within weeks. That is part of Kaiser's plan. Dialysis is expensive, so is transporting patients to and from dialysis. By killing off these patients, Kaiser is left with a much more profitable patient base, resulting in billions in profits."

The Court GRANTS the Motion to Strike in part. References to Kaiser welcoming deaths, causing deaths or profiting from deaths – unsubstantiated by factual allegations – are immaterial and scandalous and should be stricken.

>   <u>Paragraph 42, Page 12, Lines 23-26</u>: "… ProTransport does care about these patients and could not leave them to die as Kaiser had intended. Thus, ProTransport's action, at bottom, is about protecting these vulnerable patients and ensuring that they are not continually lied to by Kaiser who promises to comply with applicable law, yet fails to provide these lifesaving transports for its patients."

The Court GRANTS the Motion to Strike in part. References to Kaiser welcoming deaths, causing deaths or profiting from deaths – unsubstantiated by factual allegations – are immaterial and scandalous and should be stricken.

>   <u>Paragraph 49, Page 13, Lines 26-27</u>: "… or these patients will die – yet Kaiser refuses to pay for these medically necessary transports."

The Court DENIES the Motion to Strike. This allegation, when read in full, is not immaterial or scandalous.

>   <u>Paragraph 82, Page 18, lines 26-27 and page 19, lines 1-2</u>: "The retaliatory actions taken by Kaiser against ProTransport, as alleged herein, occurred within 120 days of ProTransport's complaints to Kaiser regarding its illegal refusal to pay for its patients' transports with the funds provided to Kaiser by Medicare and Kaiser's insistence that ProTransport bills Medi-Cal for these federal-paid-for services."

The Court DENIES the Motion to Strike. These allegations are not immaterial.

>   <u>Paragraph 83, Page 19, lines 3-5</u>: "Accordingly; under Health & Safety Code § 1278.5(d)(1), ProTransport is entitled to a rebuttable presumption that the retaliatory actions taken against ProTransport are attributable to its complaints regarding Kaiser's illegal activity.";

The Court DENIES the Motion to Strike. While no longer relevant to the case, in light of this claim's dismissal, the allegations are not immaterial.

1   Paragraph 96, Page 21, lines 13-14: "who then die within weeks
    without dialysis."

The Court GRANTS the Motion to Strike. References to Kaiser welcoming deaths, causing deaths or profiting from deaths – unsubstantiated by factual allegations – are immaterial and scandalous and should be stricken.

   Exhibit A, in its entirety.

The Court DENIES the motion to strike. While of questionable relevance, the materials in Exhibit A are not immaterial or impertinent.

### B. References to Non-Restitutionary Damages

Kaiser moves to strike portions of paragraphs 94 and 95 regarding requested remedies for the alleged UCL violations on the grounds that the requested remedies fall outside of restitution allowed under the UCL. Specifically, Kaiser moves the strike:

> Paragraph 94, Page 21, Lines 1-5: "As a direct, foreseeable, and proximate result of Kaiser's unlawful business practices, ProTransport has suffered and continues to suffer actual, consequential, and incidental financial losses, including without limitation, substantial loss of revenue and the costs expended in transporting Kaiser's patients at the request of Kaiser's doctors that Kaiser has illegally refused to pay for."
>
> Paragraph 95, Page 21, Lines 6-8: "Accordingly, pursuant to the UCL, ProTransport is entitled to restitution of the amount expended in transporting Kaiser's patients at the request of Kaiser's doctors that Kaiser has illegally refused to pay for."

The Court GRANTS the Motion to Strike. The only form of monetary damages authorized by the UCL is restitution and the "object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148-49 (2003). ProTransport opposes the Motion to Strike, arguing that it is "essentially seeking payment of wages for work it completed at the specific direction of Kaiser's own physicians who requested the transport" and it is well-settled that restitution under the UCL includes "lost wages." Opp. Br. at 21. However, the cases Kaiser relies on – which recognize the rights of employees to unpaid but owed wages as "vested property rights," *see e.g., Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965 (C.D. Cal. 2006); *Hirel Connectors, Inc. v. United States*, 2004 U.S. Dist. LEXIS 31036 (C.D. Cal. Jan. 23, 2004) – are

not controlling here.  The monies ProTransport seeks to recover are disputed reimbursements, which Kaiser is alleged to owe to a service provider.  Those claimed damages are in no way akin to earned but unpaid wages of an employee.

## CONCLUSION

Pursuant to the plaintiff's request, and with the Attorney General's consent, plaintiff's second through fifth and eight through tenth claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's first claim – for violation of 31 U.S.C. section 3729(a)(1)(D) is DISMISSED WITH LEAVE TO AMEND within twenty days of the date of this Order.  Plaintiff's sixth claim for violation of California Health and Safety Code section 1278.5 is DISMISSED WITH PREJUDICE.  Plaintiff's UCL Claim is DISMISSED, in part, WITH LEAVE TO AMEND. Defendant's Motion to Strike is DENIED in part and GRANTED in part.

**IT IS SO ORDERED**.

Dated: August 28, 2013



WILLIAM H. ORRICK  
United States District Judge